## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

LILLIAN NASH, )
)
)
Plaintiff, )
v. ) Case No.: 1:12cv278
) LO/TRJ
GREEN TREE SERVICING, LLC, )
)
LITTON LOAN SERVICING, LP )
)
AND )
)
COMMONWEALTH TRUSTEES, LLC )
)
Defendants. )

## MEMORANDUM IN SUPPORT OF GREEN TREE SERVICING LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

### I.    INTRODUCTION

On or about February 14, 2012 Plaintiff, Lillian Nash ("Nash" or "Plaintiff"), filed a Complaint with the Circuit Court of the County of Prince William, Virginia (the "Complaint") against Green Tree Servicing LLC ("Green Tree"), Litton Loan Servicing, LP ("Litton") and Commonwealth Trustees, LLC ("Commonwealth" and collectively with Green Tree and Litton, the "Defendants"). The Complaint consists of six counts: (i) Breach of Contract: Versus Green Tree for Invalid Notice of Default & No Authority to Appoint Substitute Trustee; (ii) Declaratory Action: Versus Green Tree and Commonwealth (Seeking Equitable Relief for Invalid Notice of Default and Unauthorized Foreclosure Efforts); (iii) Remove Cloud on Title – Va. Code Ann. § 55-153 (Strike the Document wherein Green Tree Appointed Commonwealth as Substitute Trustee from the Land Records as Unauthorized); (iv) Violation of RESPA (Versus Green Tree);

(v) Violation of the Truth in Lending Act (Pled in the Alternative – versus Green Tree); and (vi) Violation of the FDCPA.

The controversy arises from a December 26, 2007 loan from SunTrust Mortgage, Inc. ("SunTrust") to Nash (the "Loan") to purchase certain real property commonly known as 10813 Campaign Court; Manassas, Virginia 20109 (the "Property"). The Loan is evidenced in part by a note payable to SunTrust, in the original principal amount of $238,500.00 and referenced by SunTrust as loan number 0207552407 (the "Note"). The Note is secured by a Deed of Trust (the "Deed of Trust") on the Property which was executed by Nash on December 26, 2007 and referenced by SunTrust as loan number 0207552407 and recorded in the land records of Prince William County on December 28, 2007 as instrument number 200712280138017. Nash Complaint Par. 1 – 3. On May 1, 2008, servicing rights of the Loan were transferred to Litton. *Id.* at Par. 10. Thereafter, on January 1, 2011 the serving rights of the Loan were transferred from Litton to Green Tree. *Id.* at Par. 54.

On March 13, 2012, Green Tree removed the Complaint to this Court based upon federal question jurisdiction. For the foregoing reasons, Green Tree has filed a Motion to Dismiss Count I, Count II, Count III and Count V of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    ARGUMENT

### A.    Count I – Breach of Contract: Versus Green Tree for Invalid Notice of Default & No Authority to Appoint Substitute Trustee

In Count I of the Complaint Nash requests the following relief for the alleged breach of contract by Green Tree: (i) an account of all payments made by Nash and how the payments and any charges or fees were credited to the Loan; (ii) compensation for all charges and fees incorrectly added to the Loan and for other actual resulting damages; and (iii) an injunction from

2

"proceeding with any proceedings inappropriately seeking a trustee's sale of the Property." *Id.* at pg. 18 – 19. In support of these remedies, Nash alleges two separate contract theories against Green Tree. The first contract claim relies on the Home Affordable Modification Program Trial Period Plan (the "HAMP Offer") and the course of dealings of the parties from February of 2010 through August of 2010 (the "HAMP Contract Claim"). *Id.* at Par. 94 – 99; *Id.* Exhibit C pg. 3. The second contract claim relies on the language of the Deed of Trust and alleges a breach thereof by Green Tree for the alleged improper execution of an Appointment of Substitute Trustee (the "Deed of Trust Contract Claim"). *Id* at Par. 100 – 106. All of the claims for breach of contract asserted by Nash in Count I of the Complaint fail to state a claim against Green Tree upon which relief can be granted and therefore should be dismissed.

### 1. HAMP Contract Claim

#### a. Nash's Factual Allegations Supporting the HAMP Contract Claim.

Nash asserts that "[t]he terms of the written offer and the parties' course of dealing from February 2010 through August 2010, considered in light of all the circumstances, solidifies the mutual intent of the parties to contract." *Id.* at Par. 94. The "written offer" referenced Paragraph 94 of the Complaint the HAMP Offer attached, in part, to the Complaint as Exhibit C. *Id* at Par. 15 – 26. The HAMP Offer states, in relevant part,

> **To accept this offer** and see if you qualify for a Home Affordable Modification, send the 6 items listed below to 4828 Loop Central Drive, Houston, TX 77081, no later than 2/10/2010. Use the return envelope provided for your convenience. 1. Two copies of the enclosed Trial Period Plan signed by all borrowers, 2. Your first month's trial period payment in the amount of $1,519.08. . . ."

*Id.* at Par. 16; *Id.* Exhibit C pg. 3. The Trial Period Plan (the "Trial Period Plan") referenced in this quote and referenced Nash as the "TPP" is contained on pages 6 through 9 of the HAMP Offer. No copy of the executed Trial Period Plan is attached to or referenced in the Complaint.

Instead, Nash makes the following allegations in the Complaint regarding the creation of an implied contract through the course of dealing between Litton and Nash between February of 2010 and August of 2010:

(i)     Nash paid the first payment to Litton on the Trial Period Plan which was allegedly misapplied by Litton to the Loan. *Id.* at Par. 27 – 28.

(ii)    The March 15, 2010 monthly statement and April 15 monthly statement from Litton indicated that no payment was due on the Loan until May 1, 2010 and therefore Nash did not make a payment on the Loan in April of 2010. *Id.* at Par. 29 – 31.

(iii)   Nash did not make the April 2010 payment on the Loan because it would have been in excess of the required amount due under the HAMP Offer. *Id.* at Par. 32.

(iv)    By letter dated June 9, 2010 from Litton, Litton advised Nash that "Plaintiff was currently in a trial period plan" and "Plaintiff has not provided all documentation previously requested." Nash further asserts that Litton indicated, "if documentation was not received by June 24, 2010, modification review would be terminated." *Id.* at Par. 33.

(v)     The Plaintiff sent the documents requested in the June 9, 2010 letter to Litton on June 24, 2010. *Id.* at Par. 34.

(vi)    Litton by its July 15, 2010 monthly statement extended payments under the Trial Period Plan until August of 2010. Specifically, the July 2010 monthly statement states, in part, "Please continue to pay the amount listed in the Total Amount Field while Litton continues to process your request for a permanent modification." *Id.* at Par. 35; *Id* at Exhibit F.

(vii)   By letter dated August 16, 2010, Litton "informed Plaintiff that she was denied a HAMP Loan modification based upon her purportedly not providing the requested documents." *Id.* at Par. 36.

### b.     Nash Fails to Allege the Existence of an Express or Implied Contract.

"Under Virginia law, a party claiming breach of contract must establish three elements to prevail: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of obligation." *McInnis v. BAC Home Loan Servicing, LP*, 2012 U.S. Dist. LEXIS 13653,

*19 (2012) (citation omitted). "When a loan modification is contemplated, the borrower *offers* the application to the lender, which the lender can either accept or reject after a determination of the borrower's eligibility." *Id.* at 20 (citation omitted). "Similarly, a lender's prequalification of a borrower does not obligate the lender to extend or modify a loan." *Id* (citation omitted).

Accordingly, Green Tree was under no obligation to extend or modify Nash's loan simply by virtue of the fact that it or Litton sent Nash the HAMP Offer or Trial Period Plan. Green Tree had the right to reject Nash's application upon determining that she was not eligible, and exercised that right accordingly. Nash does not allege that Green Tree properly accepted her HAMP application, nor does she attach an executed copy of the application to the Complaint. Therefore, Nash fails to allege that an express contract exists between the parties.

Nash relies on the circumstances and the conduct of the parties to support her HAMP Contract Claim. Complaint at Par. 94. The "course of dealing" asserted by Nash concludes with Litton advising Nash that Litton "*denied* a HAMP Loan modification based upon her purportedly not providing the requested documents." *Id.* at Par. 36 (emphasis added). These facts as alleged by Nash do not provide any legal basis for a binding contract with Litton. Further, these facts do not allege any action or contract with Green Tree and in fact, have nothing to do with Green Tree therefore, there can be no breach of contract claim under these facts against Green Tree.

          **c.**    **Assuming the Existence of an Express or Implied Contract, the Contract is with Litton and the Breach is by Litton.**

Assuming the existence of a HAMP Offer / Trial Period Plan contract, Nash still fails to state a claim against Green Tree. Based upon the dates alleged in the Complaint, the contract and any breach thereof would be with Litton and by Litton and not Green Tree. Nash alleges the following breaches:

(i)      "In breach of the contract, the TPP payments and the requirement that Plaintiff refrain from making a payment in April was used to label Plaintiff with default status." *Id.* at Par. 95.

(ii)     Nash next alleges a breach by Litton for Litton's alleged improper threats of foreclosure in October of 2010 as Nash asserts she had "successfully completed the TPP." *Id.* at Par. 96.

(iii)    Finally, Nash alleges a breach by Litton for Litton's improper application and request of the February 2010, March 2010 and April 2010 payments which allegedly created an escrow shortage which increased Nash's monthly payments on the Loan. *Id* at Par. 97 – 98.

Each of the above "breaches" alleged are breaches by Litton. Further, according to the allegations in the Complaint, Green Tree was not the servicer of the Loan until January 1, 2011. As all actions giving rise to any alleged contract and breach thereof relate to Litton, Nash has failed to allege facts supporting a cause of action for breach of contract against Green Tree.

### d.     Any Alleged Contract is Barred by the Statute of Frauds.

Any alleged contract based upon the course of dealing between Nash and the Defendants is barred by the Statute of Frauds. Va. Code Ann. § 11-2 provides in relevant part:

> Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases:
>
> 8. Upon any agreement that is not to be performed within a year; or
>
> 9. Upon any agreement or promise to lend money or extend credit in an aggregate amount of $ 25,000 or more.

The Note and Deed of Trust clearly fall within the restrictions referenced above and therefore any modification to the Note and/or Deed of Trust by the Trial Period Plan must also be in writing and signed by the party to be charged. Further, the Trial Period Plan specifically states,

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and

6

supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

Complaint Exhibit C pg. 6. The Trial Period Plan further provides, "This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature." *Id.* Therefore, Nash has not alleged the existence of a contract that is enforceable pursuant to the Statute of Frauds or Va. Code Ann. § 11-2 and consequently has failed to state a claim against Green Tree for Breach of Contract.

## 2. Deed of Trust Contract Claim

### a. Nash's Factual Allegations Supporting the Deed of Trust Contract Claim.

Nash next asserts a breach of contract claim against Green Tree based upon Green Tree's alleged breach of the terms of the Note and the Deed of Trust by (i) improperly referring the Property to foreclosure and pursuing same; and (ii) invoking the power of sale pursuant to the Deed of Trust and executing an Appointment of Substitute Trustee which stated Green Tree was the owner and holder of the Note despite having advised Nash by letter that Fannie Mae was the owner of the Loan. *Id.* at Par. 99 - 106.

### b. Green Tree is not a party to the Note or the Deed of Trust and therefore cannot be found in breach of the Note or the Deed of Trust.

Nash alleges, "Green Tree being an entity which is *not a party to the contract*, the explicit terms of deed of trust were breached when Green Tree invoked the power of sale and executed said Appointment of Substitute Trustee as Green Tree lacked authority thereunder to execute said acts." *Id.* at Par. 104 (emphasis added). Accepting as true, the allegations contained in Paragraphs 99 – 106 of the Complaint, Nash fails to state a claim for breach of contract against Green Tree as per

Nash's own statements, Green Tree is not a party to the contract alleged to be breached (i.e. the Note and the Deed of Trust).

Courts have consistently held that "there is no private right of action for individual borrowers to assert claims against lenders for violations of HAMP." *McInnis,* 2012 U.S. Dist. LEXIS 13653, at *8 (citation omitted). Therefore, Nash is attempting to circumvent these rulings by asserting a purported contract claim against Green Tree, where absolutely no contract exists with Green Tree. Nash cannot create a contract claim by alleging that an entity that is not a party to a contract breached the terms of the contract. As Nash has failed to allege necessary facts to support a claim for a breach of contract, as to Green Tree, Count I of the Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A.  **Count II – Declaratory Action: Versus Green Tree and Commonwealth (Seeking Equitable Relief for Invalid Notice of Default and Unauthorized Foreclosure Efforts).**

In Count II of the Complaint Nash seeks to have the Court: (i) Declare that she "did not default on her mortgage obligation"; (ii) Declare that the Defendants "have no right to proceed with a foreclosure sale" on the Property; and (iii) Declare that the Defendants "improperly reported [Nash's] loan status to credit bureaus." Complaint at pg. 20 – 21. In addition, under the breach of contract claims asserted under Count I, Nash moves the Court to enjoin the Defendants from "proceeding with any proceedings inappropriately seeking a trustee's sale of the Property pending further order of this Court." *Id.* at pg. 19.

1.  **All Claims for Declaratory Relief are Improper Because a Court may not Decide a Disputed Fact that Would be Determinative of Issues in a Declaratory Action.**

Each of the declarations Nash requests would require the Court to decide factual disputes which would be determinative of the underlying issues. This is not permitted in a declaratory

judgment action. The Supreme Court of Virginia has stated that, "[w]here a declaratory judgment as to a disputed fact would be determinative of issues, rather than a construction of definitive stated rights, status, and other relations, commonly expressed in written instruments, the case is not one for declaratory judgment." *Board of Supervisors, et al. v. Town of Purcellville*, et al., 276 Va. 419 (2008) (citing *Williams v. Southern Bank of Norfolk*, 203 Va. 657, 663 (1962)); see also *Green v. Goodman-Gable-Gould Co., Inc.*, 268 Va. 102, 108 (2004) (finding that declaratory relief was inappropriate because Plaintiff's "actual objective in the . . . proceeding was a determination of that disputed issue rather than an adjudication of the parties' rights, an issue which should have been litigated in the context of a breach of contract claim."). The Supreme Court has made it clear that "[t]he power to make a declaratory judgment . . . will not as a rule [be] exercised where some other mode of proceeding is provided." *Board of Supervisors*, 276 Va. at 435 (citing *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970)). Because the declarations requested by Nash require the court to decide disputed factual issues, a declaratory judgment action is not allowed and thus, Nash fails to state a declaratory action against Green Tree.

    **2.**    **Nash's Requests for Declaratory Relief Finding that She "did not default on her mortgage obligation."**

        **a.**    **Declaratory Relief is not Proper if the Questioned Conduct has Already Occurred.**

"Default" is a defined term or event under the Note. Specifically, the Note provides that, "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." *Id.* Exhibit B pg. 2. The Note further provides that,

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

9

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

*Id.* Nash acknowledges that Litton sent her three "Notice of Default and Intent to Accelerate" dated November 11, 2010, November 12, 2010 and December 29, 2010. *Id.* at Par. 45, 46 and 52. Nash further acknowledges that Green Tree sent her a "Notice of Default and Right to Cure" dated March 25, 2011. *Id.* at Par. 64. Thus, the Note has already been declared in default and any wrong Nash suffered as a result of the allegedly improper default has already occurred.

Federal Rule of Civil Procedure 57 provides that the federal rules "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued." *Tapia v. United States Bank, N.A.*, 718 F. Supp. 2d 689, 696 (E.D.V.A. 2010) (citation omitted).

A declaratory judgment at this stage is inappropriate and therefore, Nash fails to state a claim upon which relief can be granted.

### b. The Facts Alleged by Nash do not Support the Declaratory Relief Requested.

Even if Nash's declaratory action was procedurally appropriate, Nash fails to set forth plausible facts showing she is entitled to declaratory relief that she is not in default of the Loan. Specifically, Nash acknowledges that her initial monthly payments under the Note were approximately $2,016.49 and that pursuant to the Trial Period Plan she was to pay $1,519.08. Complaint Par. 8 – 9, 16. The Trial Period Plan states that:

> [w]hen the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents.

*Id.* Exhibit C pg. 7. The Trial Period Plan further provides that in the event the loan is not modified,

> the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me.

*Id.* at pg. 8. The Trial Period Plan further provides, "I [Nash] understand that this Plan is not a modification to the Loan Documents . . . ." and "[t]hat all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." *Id* at pg. 7 – 8.

Nash acknowledges that by letter dated August 16, 2010 Litton informed Nash "that she was denied a HAMP loan modification based on her purportedly not providing the requested documents." *Id.* at Par. 36. Despite admitting that she paid only $1,519.08 per month from February of 2010 through August 2010 when her monthly payment pursuant to the Note was $2,016.49, Nash maintains that she "never missed a required payment and followed all direction as advised by the servicer." *Id.* at Par. 113. This conclusory statement does not adequately set forth a claim for relief that is plausible on its face and therefore plaintiff fails to state a claim for declaratory relief. "In order to survive a Rule 12(b)(6) motion to dismiss a complaint must set forth a claim for relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tapia,* 718 F. Supp. 2d at 694 (citation omitted). Nash fails to

allege that she made all payments required under the Note, which is the contract that controls pursuant to the facts alleged.

### 3. Declare that the Defendants "improperly reported [Nash's] loan status to credit bureaus."

#### a. Declaratory Relief is not Proper if the Questioned conduct has Already Occurred.

As addressed above, Nash is moving the court to find that an act that occurred in the past was improper. As previously stated, declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued. *Tapia*, 718 F. Supp. 2d at 696 (citation omitted). According to the Complaint, Nash "prays this Court: . . . Declare Defendants inappropriately reported Plaintiff's loan status to credit bureaus." Complaint at pg. 21.

#### b. Nash Fails to Allege any Facts Supporting the Declaratory Relief Requested Regarding the Reporting of the Loan to the Credit Bureaus.

There are no factual allegations in the Complaint as to how Green Tree or any of the Defendants are or were reporting Nash's Loan to credit bureaus. Further, with the exception of the prayer for relief quoted above, there is no reference or allegation regarding credit reporting anywhere in Count I or Count II of the Complaint. "A plaintiff's obligation to provide the ground of entitlement to relief requires more than labels and conclusions. Legal conclusions must be supported by factual allegations and the factual allegations must be enough to raise a right to relief above the speculative level, as the Supreme Court does not intend to unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Tapia*, 718 F. Supp. 2d at 698 (citation omitted). Since there are no facts alleged supporting this claim, fails to state a claim for declaratory relief against Green Tree as to credit reporting.

**4.**      **Declare that the Defendants "have no right to proceed with a foreclosure sale" on the Property and Enjoin the Defendants from "proceeding with any proceedings inappropriately seeking a trustee's sale of the Property pending further order of this Court."**

**a.**      **Nash Fails to Allege Facts Sufficient for Injunctive Relief or a Declaratory Order Preventing Foreclosure.**

Nash moves the court to enjoin the defendants from proceeding with a foreclosure sale of the Property. Complaint Pg. 19 – 21. To obtain a preliminary injunction, Nash must establish "(1) that [she] is likely to succeed on the merits, (2) that [she] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [her] favor, and (4) that an injunction is in the public interest." *McInnis,* 2012 U.S. Dist. LEXIS 13653, at *7 (citation omitted). Nash has failed to allege any of these elements or facts supporting these elements in the Complaint. Therefore, Nash fails to allege sufficient facts to support the declaratory relief and injunctive relief requested.

Nash's claim to prevent a foreclosure sale on the Property is based on her assertion that she "never missed a required payment and followed all direction as advised by the servicer." As stated more fully above, Nash's factual assertion that she is not in default on the Loan is not plausible given the facts alleged by her in the Complaint. Nash admits that she paid only $1,519.08 in February of 2010, and monthly from May of 2010 through August 2010. Complaint at Par. 16, 27 and 35. Nash admits that her monthly payment pursuant to the Note is approximately $2,000.00. *Id.* at Par. 9, 20. Further, the document she relies on in her assertion that she is not in default states, in part:

> [w]hen the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents.

*Id.* Exhibit C at pg. 7. The facts presented by Nash in the Complaint and the documents attached thereto do not support Nash's conclusory allegation that she is not in default of the Loan. As such, they do not provide a basis for the Court to grant declaratory relief and prevent the Defendants from proceeding with a foreclosure.

Nash next asserts she is entitled to declaratory relief because the Appointment of Substitute Trustee executed by Green Tree is invalid as the Deed of Trust does not permit Green Tree to execute the document and because it improperly states that Green Tree is the owner of the Loan. In the Complaint, Nash acknowledges that she signed the Deed of Trust and that it created a valid and binding first priority lien on the Property in favor of SunTrust. *Id.* at Par. 2 – 3. As more fully set forth below, the execution of the Appointment of Substitute Trustee was valid and Green Tree was authorized to execute it. Regardless of whether the Appointment of Substitute Trustee was appropriate this is not a basis for a declaration that no foreclosure could occur. Even if this needed to be corrected, it could be done.

As Nash has failed to allege a plausible factual basis as to why she is not in default of the Loan and acknowledges the validity of the Deed of Trust, Nash has failed to assert any factual basis to justify the declaratory relief requested in the Complaint.

### b. Nash Requests Relief which is not Permitted in a Declaratory Action.

In addition, in Count II Nash requests the Court award her damages, "for late fees, charges, and expenses incurred in defending her rights and the Property" and award "punitive damages for the emotional distress and turmoil that she has endured as a result of her reliance upon the misrepresentation." *Id.* at pg. 20 – 21. By its very nature, a declaratory action requests a Court to interpret the meaning, application or effect of a specific document or provision. Therefore, in a declaratory action one is not entitled to recover monetary or punitive damages.

14

Further, "[p]unitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 579 (Va. 2011), *quoting Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 277 (1967). Nash's claims fail to state facts sufficient to support such a standard and therefore the prayer for punitive damages should be dismissed.

Accordingly, Nash has failed to allege necessary facts to support a claim for a declaratory judgment and therefore, as to Green Tree, Count II of the Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## C. Count III - Remove Cloud on Title - Va. Code § 55-153: Strike the Document wherein Green Tree Appointed Commonwealth as Substitute Trustee from the Land Records as Unauthorized

In Count III of the Complaint and pursuant to Va. Code Ann. § 55-153, Nash requests a court order directing the land records clerk to strike or remove the Appointment of Substitute Trustee document from the land records or in the alternative execute an order to be filed among the land records, properly indexed, declaring the Appointment of Substitute Trustee void and of no legal effect.

### 1. Nash's Factual Allegations Supporting the Claim to Remove the "Cloud on Title" are Insufficient as a Matter of Law.

In support of Count III of the Complaint, Nash alleges that,

(i)     On June 27, 2011, an agent of Green Tree, executed an Appointment of Substitute Trustee wherein Green Tree as purported owner and holder of the note secured by the Deed of Trust appointed Commonwealth as substitute trustee. *Id*. at Par. 102.

(ii)    The Appointment of Substitute Trustee falsely states that Green Tree was the owner and holder of the Note. *Id*. at Par. 103 – 104.

(iii)   "Only the party secured by the Deed of Trust (the successor-in-interest to the Lender) may remove and appoint substitute trustees or invoke the power to sale."

has the "sole authority to invoke the power of sale and remove/appoint substitute trustees." *Id* at Par. 117.

(iv)   "The Deed of Trust defines "may" as giving sole discretion, thus the terms of the contract are clear that those powers are limited to only the owner of the Note/Loan. *Id.* at Par. 118.

(v)   Green Tree does not have the authority to invoke the power of sale or appoint substitute trustees because it was not the party secured by the Deed of Trust. *Id* at Par. 119.

The Supreme Court of Virginia has defined the term "cloud on title" as follows:

[A]n out-standing claim or incumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently on its face has that effect, which can be shown by extrinsic proof to be invalid or inapplicable to the estate in questions (citations omitted). A cloud is said to be the semblance of a title, either legal or equitable, or a claim of an interest in lands, appearing in some legal form, but which is in fact unfounded; or which it would be inequitable to enforce.

*Day v. Vaughn & Usilton, Inc.*, 193 Va. 168, 172 (1951) (citations omitted). "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title. A plaintiff asserting a quiet title claim must plead and prove that she has superior title to the property." *Tapia*, 718 F. Supp. at 700 (citation omitted).

Nash fails to allege how the Appointment of Substitute Trustee impairs the title owner (Nash). Indeed, Nash admits the validity of the Deed of Trust and states that the Property is "subject to a lien in favor of SunTrust, as reflected by the Deed of Trust. . . ." *Id.* at Par. 2 – 3. Nash makes no factual allegation that her debt was forgiven, cancelled, or fully paid. *Ramirez-Alvarez v. Aurora Loan Servs.*, LLC, 2010 U.S. Dist. LEXIS 116995, *3 (E.D.V.A. 2010). In a nearly parallel factual scenario, the Court in *Tapia* dismissed Plaintiffs' claim because they "d[id] not allege that they fully satisfied their obligation to the real party in interest", or "that the debt

was otherwise forgiven or cancelled." *Tapia,* 718 F.Supp.2d, at 700. Therefore, just as the plaintiff in the *Tapia* case, Nash has failed to state a claim upon which relief can be granted.

### 2. The Appointment of Substitute Trustee does not Affect the Marketability of Property and Therefore it is not a Cloud on Title.

Furthermore, in order to have a "cloud on title" the claim or incumbrance must "[i]mpair, diminish, or adversely affect the title and have a significant, negative impact on the property." *Downey v. Allegheny Power Company,* 75 Va. Cir. 131, 132 (Va. Cir. 2008) (citation omitted). Additionally, it must be "calculated to affect the marketability of the title." *Neff v. Ryman,* 100 Va. 521, 524 (1902).

Nash fails to allege any facts to establish that the Appointment of Substitute Trustee has a negative impact on the title to the Property or otherwise adversely affects the Property (or that the Defendants assert any claim to title in the Property). The Appointment of Substitute Trustee, does not affect title to the Property or marketability of that title. Nash acknowledges that she signed the Deed of Trust and that it created a first lien on the property in favor of SunTrust. Complaint at Par. 2 – 3. The Deed of Trust affects the marketability of the Title as it provides notice of the first priority lien on the Property. The Appointment of Substitute Trustee merely changes the named trustee in the Deed of Trust from "Jackie Miller" to Commonwealth. The Appointment of Substitute Trustee does not create a "cloud on title" because the changing of the trustee in the Deed of Trust does not impair, diminish, or adversely affect the title to the Property. Even assuming that pursuant to the loan documents Green Tree was not permitted to do any of the above, the Appointment of Substitute Trustee does not create a cloud on title because it has no effect on the marketability of the Property. Therefore, Nash has failed to state a claim upon which relief can be granted.

2. **The Deed of Trust Grants a Servicer Broad Authority to Perform "other mortgage loan servicing obligations" Under the Deed of Trust.**

Nash argues that Lender had the "sole authority" to invoke the power of sale and to appoint a substitute trustee, because (i) Paragraph 22 of the Deed of Trust does not explicitly provide that Green Tree may exercise the powers of sale/appointment, and (ii) because Paragraph 16 of the Deed of Trust states that "the word 'may' gives sole discretion without any obligation to take any action." Nash's argument that fails in light on the security instrument itself. Nash acknowledges that she signed the Deed of Trust and that it created a first lien on the property. *Id.* at Par. 2-3. Paragraph 22 of the Deed of Trust states:

> "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand may invoke the power of sale and any other remedies permitted by Applicable Law."

Paragraph 24 of the Deed of Trust states:

> **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

Paragraph 20 of the Deed of Trust provides as follows:

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and *performs other mortgage loan servicing obligations* under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. (emphasis added).

It is well established law, that a contract must be construed as written and as a whole with parts being harmonized whenever possible. *Ward's Equipment Inc. v. New Holland N. America, Inc.,* 254 Va. 379, 382 (1997). Considering the Deed of Trust as a whole, it is clear that the parties contemplated a situation in which the Lender would assign the servicing rights of the loan to loan servicer, who would be responsible for among other things, "collect[ing] Periodic Payments due under the Note and this Security Instrument and "perform[ing] other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." Complaint Exhibit C pg. 11 – 12. By signing the Deed of Trust, Nash agreed that a loan servicer for the Lender had the right to perform other mortgage loan servicing obligations under the Deed of Trust. Throughout the Complaint, Nash acknowledges that as of January of 2011, servicing rights on the Loan were transferred from Litton to Green Tree. Therefore, pursuant to the language of the Deed of Trust, Green Tree may as loan servicer perform other mortgage loan servicing obligations under the Deed of Trust, including, but not limited to appointing a substitute trustee.

Accordingly, Nash has failed to allege necessary facts to support a claim for removal of a cloud on title pursuant to Va. Code Ann. § 55-153 and therefore, as to Green Tree, Count III of the Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A. **Count V – Violation of the Truth in Lending Act (Pled in the Alternative – Versus Green Tree)**

1. **Nash's Factual Allegations Supporting the Alleged Violation of 15 U.S.C. § 1641(g)(1).**

Nash alleges that Green Tree violated 15 U.S.C. § 1641(g)(1) by failing to notify Nash that Green Tree purchased or otherwise acquired the Loan. Supporting this alleged violation of the Truth in Lending Action, Nash asserts that her principal dwelling secures the Loan and that

according to a June 14, 2011 letter from Green Tree, Fannie Mae was identified as the owner of the Note. Complaint Par. 136 – 137. Nash next asserts that the Appointment of Substitution of Trustee dated June 27 2011, identifies Green Tree as "the owner and holder of the note secured by said Deed of Trust." Relying on this language, Nash asserts that Green Tree is a creditor within the meaning of 15 U.S.C. 1641(g) who purchased or otherwise received transfer of the Loan at an undisclosed time and that Green Tree failed to properly notify her of the transfer or assignment of the Loan to Green Tree. As set forth above and in the Complaint, Green Tree is the servicer of the Loan.

The Truth in Lending Act states that "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." 15 USCS § 1641(f). See *Short v. Wells Fargo Bank Minn., N.A.*, 401 F. Supp. 2d 549, 563 (S.D. W. Va. 2005) ("As there appears to be no dispute among the parties that Countrywide merely provided administrative functions in servicing the loan . . . the Court, in accordance with § 1641(f), grants the motion [to dismiss]"). Therefore, accepting all the allegations as true, Plaintiff has failed to state a claim for relief under the Truth in Lending Act against Green Tree for which relief can be granted.

## III.   CONCLUSION

WHEREFORE, Green Tree Servicing LLC asks that this Court dismiss Count I, Count II, Count III and Count IV of the Complaint filed by the Plaintiff, Lillian Nash in this matter on the basis that the Plaintiff has failed to allege necessary facts to support these claims and for such other and further relief as this Court deems just and proper.

GREEN TREE SERVICING LLC

By: _____
Counsel

Robert H. Chappell, III (VSB #31698)
Timothy G. Moore (VSB #41730)
James B. Olmsted (VSB #75270)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
P.O. Box 1555
Richmond, VA 23218-1555
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
*Counsel for Green Tree Servicing, LLC*

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of the foregoing document was sent this /3 day

of March, 2012 by first class mail:

Jessica M. Carter, Esquire
Brown, Brown & Brown, P.C.
6269 Franconia Road
Alexandria, VA 22310

Litton Loan Servicing, LP
c/o Corporation Service Company, Registered Agent
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, VA 23219

Commonwealth Trustees, LLC
c/o Ruhi F. Mirza, Registered Agent
8601 Westwood Center Drive, Suite 255
Vienna, VA 22182

_____
Counsel

21