UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED JUN 28 2012 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

| | |
|---|---|
| LILLIAN NASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:12-cv-278 |
| | ) |
| GREEN TREE SERVICING, LLC, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Currently before the Court are Green Tree Servicing, LLC's ("Green Tree") Motions to Dismiss (Dkt. No. 19) and for a More Definite Statement (Dkt. No. 21); Commonwealth Trustees LLC's ("Commonwealth") Motion to Dismiss (Dkt. No. 22); Litton Loan Servicing, LP's ("Litton") Motion to Dismiss (Dkt. No. 25); and Plaintiff's Motion to Dismiss Green Tree's Counterclaim (Dkt. No. 33). For the reasons stated in open Court, and good cause shown, it is hereby

ORDERED that Green Tree's Motion to Dismiss is GRANTED in PART, while its Motion for a More Definite Statement is DENIED. It is further ORDERED that Commonwealth's Motion to Dismiss is GRANTED in PART; Litton's Motion to Dismiss is DENIED; and Nash's Motion to Dismiss Green Tree's Counterclaim is GRANTED. Pursuant to an agreement between Nash and Green Tree, Green Tree's Counterclaim is DISMISSED WITHOUT PREJUDICE.

The Amended Complaint contains eight counts: (1) breach of contract (against all Defendants); (2) tortious interference with the contract (against Litton); (3) unconscionability (against all Defendants); (4) declaratory action (against Green Tree and Commonwealth);

1

(5) remove cloud on title; (6) violation of the Real Estate Settlement Procedures Act ("RESPA") (against Green Tree); (7) violation of the Truth in Lending Act ("TILA") (pled in the alternative against Green Tree); and (8) violation of the Fair Debt Collections Practices Act ("FDCPA") (against Green Tree and Commonwealth). Green Tree counterclaims for money judgment against the Plaintiff for the amount due under the note. Each Defendant seeks dismissal of all counts pled against it.

At oral argument, the Court made a number of preliminary rulings in open Court. After additional review of the pleadings and applicable case law, the Court's rulings remain unchanged and will not be expounded upon here. As to Count I, the Court DENIED Litton's Motion to Dismiss but GRANTED Motions to Dismiss of Green Tree and Commonwealth. Regarding Count II, the Court DENIED Litton's Motion to Dismiss. The Court GRANTED the Defendants' Motions to Dismiss Counts III, IV, V & VII. The Court took Defendants' Motions to Dismiss Counts VI and VIII under advisement and addresses them here.

I.  **Background**

This is a dispute between Lillian Nash, servicers of her home loan, and a substitute trustee appointed to conduct a foreclosure. On December 26, 2007, Nash received a loan from SunTrust, Inc. ("SunTrust") to purchase real property in Manassas, Virginia. Her loan is evidenced by a note payable to SunTrust (the "Note"). The Note was secured by a deed of trust on the property (the "Deed of Trust"). Mortgage Electronic Registration Systems, Inc. ("MERS") was the initial beneficiary under the Deed of Trust.

As the rights to service her Note and beneficiary status under the Deed of Trust changed hands, Nash sought to modify her loan payment schedule to avoid default. On May 1, 2008, SunTrust transferred servicing rights on the loan to Litton. On January 27, 2010, Litton sent

2

Nash information about the Home Affordability Modification Program ("HAMP"). The letter provided that if Nash fulfilled the terms of a trial period plan ("TPP"), including submitting reduced monthly payments and providing financial information, Litton would consider Nash for permanent modification. Nash maintains that she submitted trial period payments in the amount requested by Litton. Litton, in turn, accepted her payments, and indicated that Nash was "currently in a Trial Period Plan." *E.g.*, Compl. Ex. G (Nash's February 2010 Loan Statement). In August 2010, Litton denied Nash's request for a permanent modification. In many cases, this denial has been the issue before the court. *See, e.g., Jones III v. Bank of America, N.A.*, 2012 WL 405053, at *4-5 (E.D. Feb. 7, 2012) (holding HAMP does not create a private right of action for borrowers asserting rights to a permanent loan modification). This case is different.

When Litton denied Plaintiff's application for permanent modification, it also ended the TPP. Though, in Nash's view, she had never missed a payment,[1] Litton maintained that she now owed the difference between the lower TPP payments and her regular monthly payments— immediately. Litton found Nash in default for making the TPP payments it requested and accepted pursuant to the TPP. In November 2010, Litton provided Nash with a Notice of Default and Intent to Accelerate. *See* Compl. Ex. 14. At that time, Litton reported Nash owed $6,482.27 to bring her loan current.

On January 1, 2011, Litton transferred servicing rights on the loan to Green Tree. MERS also transferred its beneficiary rights under the Deed of Trust to Green Tree. *See* Green Tree

---

[1] There is some dispute whether Nash owed, and therefore missed, a payment in April 2010. Nash points to her statement from Litton during that period, which indicated no payment was due in April 2010. *See* Am. Compl. Ex. H. However, the initial TPP letter from Litton provided for payment in April 2010. *See* Am. Compl. Ex. E, at 3. The Court takes the Plaintiff's allegations as true for purposes of the Defendants' Motions to Dismiss and need not address or resolve this factual dispute here.

Opp'n, Ex. B.[2] Plaintiff's first monthly statement from Green Tree sought a $6,147.64 past due payment. Am. Compl. Ex. S. Plaintiff disputed the amount owed in a series of letters to Green Tree. These letters are the source of her RESPA claim. As the back and forth continued, Green Tree stopped accepting Plaintiff's loan payments and returned two checks from May and June 2011. At oral argument, Nash's counsel clarified that she has not made payment since. On November 9, 2011, Commonwealth notified the Plaintiff that it had been appointed substitute trustee[3] in June 2011 and her home was scheduled for foreclosure sale on November 29, 2011. The sale was cancelled and has not been rescheduled.

## II. Legal Standard

Under Fed. R. Civ. P. 12(b)(6) an adequate complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, a Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

---

[2] Although the assignment from MERS to Green Tree is not referenced in the Amended Complaint, it is properly considered at the motion to dismiss stage. *See Gasner v. Cnty. of Dinwiddle*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment."). The assignment is a public record and the Court may take judicial notice of the document and look to it in deciding a motion to dismiss so long as its authenticity is not disputed. *See Wittholm v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006). Authenticity of the assignment is not disputed here.

[3] It appears Green Tree appointed Commonwealth substitute trustee solely for the purpose of foreclosure. Nash's relationship with Green Tree continued uninterrupted after Commonwealth's appointment. *See, e.g.*, Compl. ¶ 93 (Green Tree contacted Nash on January 4, 2012 to inform her of her new account representative at Green Tree).

### III. Analysis

The Court addresses the remaining claims under RESPA and the FDCPA in turn. Neither claim will be dismissed at this preliminary stage.

#### A. Count VI – RESPA

Plaintiff argues that Green Tree violated RESPA on six occasions by failing to investigate and respond to qualified written requests ("QWRs"). "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent for the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . ." 12 U.S.C. § 2605(e)(1)(A). RESPA's implementing regulations clarify servicers' duties and ability to streamline the receipt of QWRs. Upon a transfer of servicing rights, servicers may include a notice that they use "a separate and exclusive address for the receipt and handling of qualified written requests." 24 C.F.R. 3500.21(e)(1). The notice of transfer Green Tree sent to Nash provided: "If you want to send a 'qualified written request' regarding the servicing of your loan to your new servicer, it must be sent to this address: Green Tree, PO Box 6176, Rapid City, SD 57709-6176." Am. Compl., Ex. P at 2.

Green Tree maintains Nash sent the six QWRs at issue to Green Tree's Palatine, Illinois address rather than the Rapid City, South Dakota address Green Tree established as its separate and exclusive address for the receipt of QWRs. Later, when Nash sent QWRs to the proper address, Green Tree maintains it responded within the statutory period. Several district courts have dismissed RESPA counts for similar failings. However, they have primarily done so at the summary judgment stage. *See, e.g., Bally v. Homeside Lending, Inc.*, No. 02 C 5799, 2005 WL 2250856, at *2-3 (N.D. Ill. Sept. 8, 2005); *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-

0603, 2010 WL 3565415, at *3 (N.D. Tex. Sept. 7, 2010). Most have also done so where the QWR was sent to the wrong entity or otherwise did not reach the servicer. *See, e.g., Bishop v. Quicken Loans, Inc.*, No. 2:09-01076, 2010 WL 3522128, at *5-6 (S.D. W. Va. Sept. 8, 2010) (dismissing RESPA claim when plaintiff mailed the QWR at issue to non-party "IndyMac Federal Bank rather than to OneWest," the defendant in the action). Five of the six QWRs are attached to the Amended Complaint, and properly considered here. *See* Am. Compl. Exs. T, U, V, W, X. However, a sixth is not, and its destination is not apparent from the Amended Complaint. *See* Am. Compl. ¶ 59. The Court thus finds it premature to address the legal effect of 24 C.F.R. § 3500.21(e)(1) on Nash's letters to Green Tree at this time. Instead, this Court will join the majority of district courts and address the issue on summary judgment. Given this lingering factual issue, Green Tree's Motion to Dismiss count VI is denied.

### B. Count VIII – FDCPA

Plaintiff maintains that (1) Green Tree violated 15 U.S.C. § 1692c(a)(2) by contacting the Plaintiff personally after she retained counsel, (2) Commonwealth violated 15 U.S.C. § 1692g because its announcement regarding the formerly scheduled foreclosure failed to make several required disclosures; (3) Green Tree employed conduct that harassed or oppressed the Plaintiff; and (4) Green Tree used false, deceptive, or misleading means in connection with the collection of Plaintiff's mortgage payments. None of these claims is appropriately resolved on a motion to dismiss.

To prevail on a FDCPA claim against either Defendant, Plaintiff must allege (1) she was the object of collection activity from a consumer debt as defined by the FDCPA; (2) the defendants acted as a debt collector as defined by the FDCPA; and (3) the defendants engaged in an act or omission prohibited by the FDCPA. *Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85

(E.D. Va. 2005). Both Defendants contend they were not debt collectors within the meaning of the statute.

With regard to Green Tree, the issue is whether it obtained the note after Nash defaulted. "The provisions of the FDCPA generally apply only to debt collectors, and debt collectors do not include consumer's creditors, mortgage servicing companies, or assignees of debt, so long as the debt was not in default at the time it was assigned." *Ramierz-Alvarez v. Aurora Loan Servs., LLC*, No. 1:09cv1306, 2010 WL 2934473, at *5 (E.D. Va. July 21, 2010) (citing 15 U.S.C. § 1692a(6) (defining "debt collector" and noting it does not include "a debt which was not in default at the time it was obtained by such person")); *see Horvath v. Bank of New York, N.A.*, No. 1:09-cv-01129, 2010 WL 538039, at *3 (E.D. Va. Jan. 29, 2010), *aff'd* 641 F.3d 617 (4th Cir. 2011) (dismissing FDCPA claim because there was no allegation that either defendant obtained the note after plaintiff defaulted). Green Tree argues that Nash's allegation that she was *never* in default prevents her from arguing that Green Tree took on her debt when she *was* in default. The Court finds no inconsistency in Nash's pleadings.

Nash's servicers asserted her default before and immediately after Green Tree took on the servicing rights to her Note on January 1, 2011. *See, e.g.*, Am. Compl. ¶¶ 47, 52 (in November and December 2010, Nash received letters from Litton indicating the amount required to bring her loan current); *id.* ¶ 53 (Litton's December 29, 2010 letter indicated Nash's loan was "contractually delinquent"); *id.* ¶ 58 (January 11, 2011, letter from Green Tree indicated a past due payment upwards of $6,000). That Nash disputed her servicers' repeated and overt assertions of delinquency cannot shield Green Tree from liability under the FDCPA. Days before the assignment, Litton wrote Nash and referenced her "contractually delinquent" note; days after Green Tree took on servicing rights, it requested a "past due payment" of more than $6,000. In

7

such a circumstance, the Court finds Nash's allegations sufficient to indicate Green Tree obtained Nash's debt when it was in default. Green Tree's Motion to Dismiss is thus denied.

Like Green Tree, Commonwealth maintains it is not a "debt collector" as defined by the FDCPA. The FDCPA defines debt collectors as "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed . . . ." 15 U.S.C. § 1692a(6). Trustees acting in connection with a foreclosure "can" be "debt collectors" under the FDCPA. *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375 (4th Cir. 2006). In *Wilson*, the Fourth Circuit found that a trustee law firm foreclosing on a deed of trust was acting in connection with a debt. *Id.* at 376-77. The court went on to reject the defendant's assertion that it fell under the exception to "debt collector" that covers persons collecting debt due to another incidental to a "bona fide fiduciary obligation." *Id.* at 377 (quoting 1692a(6)(F)(i)). The court then remanded the matter for a determination of whether the defendant-trustee met the statutory definition of "debt collector." *Id.* at 379 (citing 15 U.S.C. § 1692a(6)).

"*Wilson* plainly requires the Court to permit [Nash] to prove that defendants acted as 'debt collectors' under the FDCPA, as long as [Nash] makes other allegations of the defendants' 'debt collector' statuses." *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 470 (E.D. Va. 2011). Though Nash's allegations that Commonwealth acted as a "debt collector" narrowly cross the threshold necessary to defeat dismissal, without the benefit of discovery, the Court cannot find with legal certainty that Commonwealth was not a "debt collector" in either sense of the statutory definition. Am. Compl. ¶ 86; *id.* ex. EE. The Court will thus deny Commonwealth's Motion to Dismiss.

## IV.   Conclusion

For the foregoing reasons and good cause shown, Defendants' Motions to Dismiss, as they pertain to Counts VI and VIII, are DENIED.

June 28, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge